DeSANTIS, Appellant,

v.

SOLLER et al., Appellees.

[Cite as *DeSantis v. Soller* (1990), 70 Ohio App.3d 226.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–1374.

Decided Nov. 8, 1990.

*Enz, Jones & LeGrand, Grey W. Jones* and *Susan M. Gabriel,* for appellant Albert J. DeSantis.

*Crabbe, Brown, Jones, Potts & Schmidt* and *Robert J. Behal,* for appellees James P. Soller and Constance Hope Soller.

*Martin & Eichenberger Co., L.P.A., Jerry A. Eichenberger* and *Dennis L. Pergram,* for appellees Richard Talbott and C. Robert Talbott.

WHITESIDE, Judge.

Defendant James P. Soller and plaintiff, Albert J. DeSantis, both appeal from a judgment of the Franklin County Common Pleas Court. Defendant Soller raises three assignments of error as follows:

"I. If a trial court, in modifying a referee's report, creates an issue of damages not dealt with by the referee, it is error for the court to make a finding of fact on a disputed issue which is specifically omitted by the referee, without either hearing the matter itself or returning the report to the referee with instructions to make the necessary findings pursuant to Civ.R. 53(E)(2).

"II. The determination of damages by the trial court was against the manifest weight of the evidence.

"III. The trial court erred in finding a binding contract between the plaintiff-appellee, Albert J. DeSantis, and defendant James P. Soller as it is contrary to law and against the manifest weight of the evidence."

Plaintiff sets forth two propositions labeled as "Law and Argument" which we shall treat as assignments of error:

"A. The trial court erred in rejecting certain factual findings made by the referee and in interpolating its own findings of fact.

"B. The trial court erred in rejecting the legal conclusions made by the referee and in its instituting own conclusions of law."

At approximately the end of April or the beginning of May 1986, defendant Soller contacted plaintiff concerning the possible sale to plaintiff of real estate

Soller owned. Subsequently, on May 8, 1986, defendant Soller met with plaintiff at the property, which is located at 58 East 17th Avenue. On that date, plaintiff signed a real estate purchase contract in which defendant Soller agreed to convey the property to plaintiff for the sum of $72,500. Although there was a factual dispute as to whether defendant Soller signed the contract that day or the following day, it is conceded that Soller did sign several copies of the contract.

The contract contained a handwritten clause which stated that the contract was contingent upon buyer's approval and inspection of all leases within forty-eight hours of acceptance. The contract also contained language by which defendant Soller was to convey to plaintiff a marketable title by transferring a general warranty deed with release of dower, if applicable. At all times relevant hereto, defendant Soller, although married, was the sole owner of the property. However, the trial court found that defendant Soller indicated to plaintiff that he wanted to talk to his wife about the matter.

On or about May 15, 1986, defendant Talbott contacted defendant Soller regarding the same property. Apparently, defendant Soller told defendant Talbott that he had a written offer from plaintiff, and the parties discussed whether the contract with plaintiff was valid absent Soller's wife's signature. On that same date, defendants Soller and Talbott entered into a real estate contract whereby Soller agreed to convey to Talbott the property at 58 East 17th Avenue, for the price of $75,000. Defendant Soller's wife conveyed her dower interest in the deed executed at the closing, which occurred the same day.

After learning of the transfer of the property to defendant Talbott, plaintiff tendered to defendant Soller the purchase price for the property, which was refused by Soller, who no longer owned the property. Plaintiff subsequently filed the instant action alleging breach of contract against defendant Soller and his wife, and fraudulent and malicious interference with contract against defendant Talbott and his brother, who is also named in the deed. Plaintiff requested that the deed to defendant Talbott be set aside and that he be granted specific performance under the terms of the real estate purchase contract signed on May 8, 1986.

The matter was heard before a common pleas court referee, who filed a report containing fourteen findings of fact and four conclusions of law. In essence, the referee found that defendant Soller had entered into a binding contract with plaintiff; that Soller breached that contract; that plaintiff was entitled to specific performance of the contract; that an equitable abatement should be taken from the purchase price in the amount of one-half of the price, or $36,250, representing Soller's wife's inchoate dower interest; that

plaintiff had proved fraudulent interference with the contract by defendant Talbott; and that plaintiff was entitled to an order cancelling the deed from Soller to Talbott.

Objections to the referee's report were filed by defendants Soller and Talbott. A hearing was held before the trial judge who rendered a decision adopting most of the referee's findings of fact and making five additional findings. The trial court rejected the referee's conclusion that defendant Talbott fraudulently interfered with the contract between plaintiff and defendant Soller and additionally rejected the referee's recommendation that specific performance be awarded to plaintiff. Instead, the trial court determined that plaintiff had been damaged in the amount of $27,500, arrived at by subtracting the contract price of $72,500 from $100,000, which the trial court determined to be the value of the property. Accordingly, the trial court entered judgment in favor of plaintiff against defendant Soller in the amount of $27,500, and also entered judgment in favor of defendant Talbott. From that judgment, defendant Soller and plaintiff appealed.

Turning initially to defendant Soller's first assignment of error and plaintiff's first assignment of error, Soller contends that the trial court erred in making a finding of fact as to the value of the property when the referee, in awarding specific performance, specifically omitted a finding on that issue. Defendant Soller claims that the proper procedure should have been for the trial court to have either taken testimony on the issue of the value or requested the referee who heard the testimony to recommend a finding. Plaintiff, by his first assignment of error, argues generally that the trial court erred in interjecting its own findings of fact and rejecting those made by the referee who heard the evidence. Specifically, plaintiff contends the trial court erred in rejecting the referee's twelfth and fourteenth findings of fact and in substituting antithetical findings.

■ Upon the filing of objections to a referee's report, the trial court has options. Specifically, Civ.R. 53(E)(2) states that the court may " * * * adopt, reject or *modify* the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself." (Emphasis added.)

Thus, the trial court is empowered by the Civil Rules to modify the referee's report. Moreover, Civ.R. 53(E)(5) provides in part as follows:

"The report of a referee shall be effective and binding only when approved and entered as a matter of record by the court. The referee's findings of fact must be sufficient for the court to make an independent analysis of the issues and to apply appropriate rules of law in reaching a judgment order. * * * "

Plaintiff asserts that in those instances in which the case has been fully heard before a referee, the trial court, when considering the report of the referee, acts as a reviewing court. Relying on *In re Estate of Woods* (1959), 110 Ohio App. 277, 11 O.O.2d 302, 167 N.E.2d 122, plaintiff asserts that the trial court utilizes a manifest weight of the evidence test when deciding to adopt, reject or modify the referee's report. However, as noted by defendant Talbott, plaintiff misapplies the holding of *In re Estate of Woods*. Plaintiff founds his assertion on the first headnote, which reads as follows:

"Findings of a referee having support in the evidence are to be given the force and effect of a verdict of a jury or the findings of a court in a nonjury case, and, as a general rule, will not be disturbed *by a Court of Appeals* unless manifestly against the weight of the evidence." (Emphasis added.)

In quoting the above language, however, plaintiff failed to include the phrase "by a Court of Appeals." Reading the first headnote of *In re Estate of Woods* in the manner suggested by plaintiff would tend to support plaintiff's assertion that the *trial court* is similarly bound by a standard of manifest weight. However, fully reading the headnote as it is written indicates that the holding of *In re Estate of Woods* with regard to reviewing the findings of a referee within the parameters of a manifest weight standard applies not to the trial court but to review by an appellate court.

In *Normandy Place Assoc. v. Beyer* (1982), 2 Ohio St.3d 102, 2 OBR 653, 443 N.E.2d 161, the Ohio Supreme Court stated that " * * * [i]t is the primary duty of the court, and not the referee, to act as a judicial officer. * * * " Moreover, Civ.R. 53(E)(5), as quoted above, contemplates a trial court's making an independent analysis of the underlying issues in the referee's report. Thus, the trial court must undertake the equivalent of a *de novo* determination, in light of any filed objections, when independently assessing the facts and conclusions contained in the report of a referee. Such *de novo* determination is based upon the referee's findings of fact unless a transcript of evidence is filed.

■ Both defendant Soller and plaintiff refer to the referee's better position to determine the credibility of the witnesses inasmuch as it was the referee who actually heard the evidence. In support, plaintiff cites language in *In re Estate of Woods* which was incorporated into the third headnote as follows:

"In case the major portion of the testimony upon a trial is taken by a referee, the trial court has no greater advantage in determining the credibility of the witnesses or appraising the truth of such testimony than the judges of the Court of Appeals upon review."

The trial court, when considering a referee's report, may have little, if any, greater advantage in determining the credibility of the witnesses than this court would upon review of the trial court's decision. The trial court, like a reviewing court, is limited to reviewing witnesses' testimony in the form of a written transcript, and lacks the advantage of physically viewing the witnesses in order to aid in determining truthfulness. However, the standard by which a trial court decides whether to adopt, reject or modify the report of a referee is not the same as that which governs the review by an appellate court of the trial court's decision upon questions of law. The Civil Rules clearly provide that the trial court must make its own factual determination by undertaking an independent analysis of the issues. The trial court is bound to enter its *own* judgment. This is a similar function to that which this court performed upon former appeals upon questions of law and fact prior to the adoption of App.R. 2. The trial court should not adopt challenged referee's findings of fact unless the trial court fully agrees with them—that is, the trial court, in weighing the evidence itself and fully substituting its judgment for that of the referee, independently reaches the same factual conclusions.

Applying the foregoing to defendant Soller's first assignment of error and plaintiff's first assignment of error, we find that both assignments of error are without merit. Defendant Soller argues that the trial court erred in making a factual finding as to the value of the property since the referee made no such finding. However, both parties who are interested in the property testified as to the value, and there was thus evidence in the record on which the trial court could base its finding. It would be no different if the referee had not recommended specific performance but had recommended the award of monetary damages and had concomitantly made a finding of the value. In that instance, the trial court would have had to examine the record to determine if that finding were supported. The trial court is not precluded from making a factual finding which the referee has failed to make. Rather, the trial court has discretion either to remand to the referee or to make the determination itself either upon the evidence in the transcript or adduced at a new hearing before the court.

Plaintiff also contends that the trial court erroneously rejected the referee's findings of fact numbers twelve and fourteen and substituted its own. The referee's twelfth "finding of fact" is not one of fact but, instead, essentially stated that neither defendant Soller's nor defendant Talbott's testimony was worthy of belief. In her fourteenth finding of fact, the referee concluded that the evidence of defendant Talbott's real estate expertise, the rivalry between plaintiff and Talbott for campus property, and Talbott's haste in conducting a closing on the property manifested Talbott's intent to interfere

with the contract between plaintiff and defendant Soller. The trial court rejected these two findings and then found that there was no evidence that defendant Talbott engaged in fraudulent activity causing defendant Soller to breach his contract with plaintiff.

■ Insofar as plaintiff relies on his erroneous interpretation of the standard to be applied by the trial court in reviewing the referee's report, this assignment of error is without merit. Furthermore, the trial court's decision is supported by the evidence. First, the trial court committed no error in rejecting the referee's twelfth "finding of fact" because the finding was not only vague but also contradicted other findings made by the referee. In finding that the testimony of both defendants was totally unbelievable, the referee implicitly rejected every statement made by either of them including those which contradicted plaintiff's statements. This is inconsistent with the referee's third finding of fact, wherein the referee found, based solely upon Soller's testimony, that at the conclusion of the May 8, 1986 meeting between plaintiff and defendant Soller, defendant Soller signed the real estate purchase contract. Plaintiff and plaintiff's representative both testified to the contrary that defendant Soller did not sign the contract that day but waited until the next day to sign it. By choosing to believe defendant Soller on this issue, the referee directly contradicted her findings that Soller's testimony was totally unbelievable. The trial court could, therefore, conclude that the referee's twelfth "finding of fact" was unsubstantiated and reject it accordingly. In any event, the trial court is free to substitute its judgment for that of the referee.

■ The trial court also rejected the referee's finding of fact number fourteen and substituted its own finding that no evidence supported the finding that defendant Talbott fraudulently interfered with the contract between plaintiff and defendant Soller. The record supports the trial court's finding.

Defendant Soller testified that, when contacted by defendant Talbott concerning the property, Soller told Talbott that he had an outstanding offer from plaintiff for $72,500 which he had not yet returned to plaintiff. Soller testified further that he did not recall telling defendant Talbott that plaintiff also had copies of the contract with both signatures on them. Although Soller also testified that he did have a conversation with Talbott regarding the signatures on the contract, he testified at trial that, whatever the conversation was, it did not change his mind as to the fact that he did not feel that the contract with plaintiff was binding on him at that point. Finally, Soller testified that Talbott told him he was going to confirm with an attorney the

question regarding the validity of the contract without a spouse's signature thereon.

Defendant Talbott's testimony verified that he was told by defendant Soller that Soller had an offer from plaintiff which he had not yet returned. Talbott testified further that he could not recall any conversations with Soller during which either the binding nature of the signatures or the validity of the contract, with or without a spouse's signature, was discussed.

In sum, except by taking a series of rather large inferential leaps, the referee had no evidence on which to base her conclusion that defendant Talbott fraudulently interfered in the contract between defendant Soller and plaintiff. The trial court committed no error in excluding that finding and finding otherwise since the trial court's finding is supported by competent, credible evidence, namely, the only direct evidence upon the issue.

For these reasons, defendant Soller's first assignment of error and plaintiff's first assignment of error are not well taken.

By his third assignment of error, defendant Soller contends that the trial court's finding that a valid contract existed between plaintiff and Soller was against the manifest weight of the evidence. Soller's argument is threefold: first, that at the time he signed it, his understanding was that he only had an *offer* from plaintiff on which he needed approval from his wife; second, that the contingency in the contract allowing plaintiff to examine the leases currently held on the property was an essential element of the contract which was not met; and third, that the $500 deposit which plaintiff was required to produce was not deposited into escrow until some time after Soller had already entered into a valid contract with defendant Talbott.

■ Although defendant Soller's testimony at trial is strong evidence of his understanding at the time he signed the contract, that testimony is not the exclusive or definitive evidence. Soller also testified that he and plaintiff signed several copies of the contract, all but one of which were left in the possession of plaintiff. In order to create a valid binding contract, there needs to be established an offer, an acceptance and delivery, all of which were present here. Even if Soller had contemplated going home and discussing the purchase price with his wife, that does not change the binding nature of the contract, at least as to defendant Soller's interest in the property.

■ Defendant Soller also argues that the contract is not enforceable because the written contingency which stated that plaintiff was to inspect and approve the current leases on the property was never fulfilled. However, the evidence indicates that plaintiff attempted to have this condition met by contacting Soller on several occasions concerning the leases, but that Soller

never made them available for plaintiff's inspection. Soller cannot now take advantage of a contingency which was not fulfilled as a means of excusing his performance when he clearly made no attempt to satisfy the condition. See *Kebe v. Nutro Machinery Corp.* (1985), 30 Ohio App.3d 175, 178, 30 OBR 316, 319, 507 N.E.2d 369, 372.

Finally, defendant Soller contends plaintiff's broker's failure to deposit plaintiff's $500 into the escrow account until after Soller had signed the contract with defendant Talbott substantiates his stated belief that the contract was not complete at the time of signing. Plaintiff's broker testified that he received the $500 check from plaintiff within two days after the contract was signed, which was prior to Talbott's contacting Soller. The broker neglected to deposit the check for approximately twelve days after that. Soller cannot justify his breach of the contract due to a circumstance of which he not only apparently was not even aware but on which he also did not rely. Nor did Soller attempt to rescind the contract. Failure to make prompt payment of the deposit and then to place the deposit in escrow does not excuse performance by the other party unless the time of payment is of the essence or such party affirmatively rescinds the agreement for such breach.

Defendant Soller's third assignment of error is not well taken.

By his second assignment of error, defendant Soller contends that the trial court's finding of fact that the property was worth $100,000 is against the manifest weight of the evidence. Upon review of the evidence, we agree.

It is unclear from the decision how the trial court arrived at the figure of $100,000 as the worth of the property. Plaintiff's broker testified at trial that, if brought up to normal conditions, the property was worth $110,000 to $125,000. Plaintiff himself testified that the property was worth $100,000 to $110,000 and that it would be worth $125,000 to $130,000 after $20,000 to $25,000 in renovations were undertaken. Finally, defendant Talbott testified that the value of the property was somewhere between $75,000 and $80,000.

Plaintiff's testimony, then, on the face of it, would support the trial court's finding that the property was worth $100,000. Ordinarily, testimony from an expert real estate broker would constitute sufficient evidence to support such a finding of fact from the trial court. However, in this instance, we find that plaintiff's testimony does not constitute such competent and credible evidence sufficient to overcome a manifest weight argument, especially in light of the dispute as to the value. Plaintiff's obvious bias and motive in placing such a high value on the property can compel only the conclusion that $100,000 was not the true value of the property. Despite plaintiff's rationale that a buyer always wants to pay less than what the property is worth, in order for this

court to find that plaintiff was willing to pay only $72,500 for a property which, by his own testimony, was worth $100,000, we would have to conclude that plaintiff was attempting to defraud or at least take unfair advantage of defendant Soller, a conclusion which we are unwilling to reach.

Clearly, defendant Talbott was also an interested party whose testimony as to the value may be less then unbiased. However, defendant Talbott testified that the value of the property was between $75,000 and $80,000 and, in fact, he purchased the property for $75,000, some $2,500 more than plaintiff finally agreed to pay after making an initial offer of $66,000. This in itself substantiates Talbott's testimony.

Nevertheless, although the trial court did have biased opinions from knowledgeable real estate brokers as to the value of the property, the controlling evidence of the value is found in the two separate contracts which were executed for the sale of the property. It is well established that the amount a buyer is willing to pay for property and what a seller is willing to sell the property for in an open market constitutes the best evidence of the property's value. *White v. Nemastil* (1985), 29 Ohio App.3d 1, 5, 29 OBR 1, 5, 503 N.E.2d 189, 194; and *Roesch v. Bray* (1988), 46 Ohio App.3d 49, 50, 545 N.E.2d 1301, 1302–1303. Plaintiff entered into a contract with defendant Soller for the negotiated purchase price of $72,500. As indicated above, plaintiff knew Soller's wife did not sign the contract releasing her inchoate dower interest, but was willing to contract without her agreement to release dower. Thus, the value of the property without a release of dower may be found to be $72,500. Plaintiff does not contend that he was deceived or misled as to the nature of defendant Soller's wife's interest in the property. Thus, plaintiff contracted to purchase the property with full awareness of the unreleased dower interest. When a sale of the property was ultimately consummated with defendant Talbott, Soller's wife did release her dower interest. Therefore, defendant Talbott's purchase of the property for $75,000 is evidence of the value of the property with the release of the dower interest.

Where there has been a recent sale of property, biased opinion evidence that the property at the time of the sale was worth one third more than the sale price does not constitute competent, credible evidence as to value, at least in the absence of any explanation for a sale for such a large amount less than its value. Here, there is no such evidence. There is no doubt of the real estate expertise of plaintiff and defendant Talbott, and the referee found that even defendant Soller "had some previous experience buying and selling real estate." Although the broker testified the property might be worth $125,000 if brought up to "normal conditions," he offered no opinion as to the value of the property as it stood and admitted that the other properties he had sold in

the area, including one across the street, sold for even less than $72,500. Plaintiff offered no explanation for his opinion other than "intuitive judgment," and indicated this was an opinion as to special intrinsic value to him, because he owned adjacent properties, rather than fair market value. Plaintiff also admitted that he first offered less for the property and only after negotiations agreed to $72,500 which he considered a fair price and accepted a contract without express provision for release of dower.

In light of the foregoing, the only pertinent evidence indicates that the value of the property without the release of dower is $72,500 and that the value of property with the dower released is $75,000. Defendant Soller's wife's interest at that point in time was an inchoate dower interest. Since there is no evidence that Mrs. Soller would have conveyed her dower interest in the property, plaintiff would have been required to take the property subject to that dower interest if he elected to complete the transaction. *Longo v. Walter* (1954), 99 Ohio App. 299, 59 O.O. 58, 133 N.E.2d 396; *Findley v. Davis* (1955), 100 Ohio App. 316, 60 O.O. 279, 136 N.E.2d 767; *Stoddart v. Marshall* (1857), 1 Disney 527. However, inasmuch as the uncontradicted testimony indicates that plaintiff was aware that defendant Soller was married, plaintiff entered into the contract knowing that Mrs. Soller had not contracted to release her dower right. The only reduction that could be taken for Mrs. Soller's inchoate dower interest is the difference between the agreed sale price and the greater amount for which defendant Soller sold the property to defendant Talbott. There is no evidence of any different value, no evidence of the value of the dower interest, and no evidence of any damages other than the difference between the agreed price and the fair market value of the property of which the only competent, credible evidence is the amount of the sale price to Talbott.

Accordingly, having found that the trial court's determination of damages is against the manifest weight of the evidence, we find that defendant Soller's second assignment of error is well taken. Since manifest weight is the sole error, pursuant to App.R. 12(C), we exercise our discretion to determine the issue and find that the judgment of the trial court awarding damages to plaintiff in the amount of $27,500 should be reduced to $2,500 and hereby modify the judgment to plaintiff for $2,500.

Finally, plaintiff, by his second assignment of error, contends that the trial court erred in awarding the remedy it did rather than the remedy recommended by the referee. The referee recommended that plaintiff be awarded specific performance with an equitable abatement of the purchase price representing the inchoate dower interest of defendant Soller's wife and that, based upon the tortious interference with the contract between plaintiff

and defendant Soller, that the deed from Soller to defendant Talbott be cancelled.

Based upon its conclusion that plaintiff had failed to prove that defendant Talbott tortiously interfered with the contract between plaintiff and defendant Soller, and based also on the fact after transfer to Talbott, the property had been materially altered and substantially improved, the trial court necessarily rejected the referee's recommendation of specific performance and cancellation of the deed to the Talbotts. Instead, the trial court awarded plaintiff damages in the amount $27,500, which it arrived at by subtracting the agreed purchase price of $72,500 from the value of $100,000 which the court attributed to the property.

As we discussed in regard to plaintiff's first assignment of error, the trial court's holding that defendant Talbott did not tortiously interfere with the contract between plaintiff and defendant Soller is not against the manifest weight of the evidence. Although many inferences and suppositions could be made from the testimony at trial, when weighed against the consistent testimony of Soller and Talbott as to what actually transpired, plaintiff has failed to prove tortious interference.

We also find no error in the trial court's refusal to grant specific performance. Plaintiff relies on *Longo, supra,* to support his position that specific performance is the proper remedy when a buyer and seller have entered into a contract for the sale of real estate and seller later refuses to perform. In *Longo,* however, there is absolutely no indication that the property which was the subject of the contract was transferred to a third party, as was the property herein. Moreover, there is no evidence in *Longo* that material alterations had been made to the property, while in this case, the parties agreed to supplement the record to reflect that a four-unit apartment building has now been built on the site. Thus, the facts in the instant case are substantially different, and *Longo* is neither applicable nor persuasive. In light of the transfer to a third party and the material alterations to the property, the trial court did not err by refusing to award specific performance as well as refusing to cancel the deed between defendants Soller and Talbott.

Accordingly, plaintiff's second assignment of error is not well taken.

For the foregoing reasons, defendant Soller's first and third assignments of error and plaintiff's first and second assignments of error are overruled; defendant Soller's second assignment of error is sustained; the judgment as to liability is affirmed; the judgment as to damages is reversed and we exercise our discretion under App.R. 12(C) to modify the judgment of the trial court by reducing the award to $2,500; and this cause is remanded to the

Franklin County Common Pleas Court for implementation and execution of the modified judgment.

*Judgment affirmed in part,*
*modified in part*
*and cause remanded.*

REILLY, P.J., and MARTIN, J., concur.

JOHN D. MARTIN, J., of the Fairfield County Common Pleas Court, sitting by assignment.