HARBEITNER, Appellant,

v.

HARBEITNER, Appellee.

[Cite as *Harbeitner v. Harbeitner* (1994), 94 Ohio App.3d 485.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64489.

Decided Jan. 31, 1994.

*Joseph G. Stafford* and *Vincent A. Stafford,* for appellant.

*S. Martin Kirsh,* for appellee.

---

PARRINO, Judge.

Plaintiff-appellant Debra A. Harbeitner ("appellant") timely appeals from a September 29, 1992 judgment entry of the court of common pleas, domestic relations division against defendant-appellee Christian O. Harbeitner ("appellee") in which the trial court granted appellant's motion to modify child support and

granted in part appellant's motion to show cause with respect to appellee's child support arrearages.

Appellant and appellee were granted a divorce on August 23, 1990. Pursuant to the divorce decree, they were awarded joint custody of their two minor children according to the terms contained in a "Joint Care, Custody and Control Agreement" ("Custody Agreement"). The Custody Agreement called for "equal possession time" for each parent with the minor children and contained terms of visitation which follow in pertinent part:

"The Plaintiff [appellant mother] will have visitation with the minor children, away from the Defendant's [appellee father's] home, Mondays through Fridays from 6:30 a.m. until 3:30 p.m. * * *."

The decree of divorce also required appellee to pay the sum of $306 per month plus poundage for the support of the children.

On August 27, 1991, appellant filed a motion to increase child support and to show cause why appellee should not be held in contempt for failure to pay child support. Prior to the hearing, both appellant and appellee signed a statement as follows:

"I understand that I have a right to a full hearing of this motion, and to call and cross-examine witnesses in support of my position. I knowingly waive that right. I request that the Court make a recommendation based on the documents submitted. * * *"

The "documents submitted" were as follows:

1. joint stipulations;

2. a health insurance investigative form;

3. a journal entry order on income source;

4. the shared parenting guideline worksheet;

5. a pay stub from each party; and

6. income and expense statements with attached medical bills.

The motions to modify child support and to show cause were heard before a referee who recommended, on February 26, 1992, that both be granted. The referee recommended an increase in appellee's monthly child support obligation to $561.

On March 9, 1992, appellee filed objections to the report of the referee alleging, *inter alia*, as follows:

"1. The referee erred in calculating appellee's child support obligation because the referee erroneously believed the minor children resided with appellant when, in fact, the minor children reside with appellee at his residence; and

"2. Appellant showed neither a change in circumstances warranting a modification of child support nor that the needs of the minor children had changed;

"3. Appellee's income increased by 10% while appellant's income increased by 15%; and

"4. Appellee's employer ceased to provide health insurance coverage for appellee and his children requiring appellee to pay $106 per month for major medical coverage."

Following appellee's objections to the referee's report, the referee, on July 31, 1992, amended her original report of February 26, 1992, and reduced appellee's child support obligation to $408 per month. On August 7, 1992, appellant objected to the amended report of the referee alleging, *inter alia*, as follows:

"1. On July 30, 1992, the referee *sua sponte* and arbitrarily amended her original report since neither appellant nor appellee filed objections to the original report;

"2. The referee incorrectly calculated the amount of time *per centum* that the children spend with each parent and made assumptions as to the number of meals that would be provided to the children by each parent, thereby basing her recommendations upon facts that were not admitted into evidence; and

"3. The referee's report failed to set out sufficient facts upon which the trial court could independently base its decision."

On September 29, 1992, the trial court adopted the amended report of the referee. The instant appeal followed.

Appellant's first assignment of error follows:

"The trial court committed reversible error by accepting and approving the amended referee's report of July 30, 1992 as the amended referee's report violated Ohio Civil Rule 53(E) and the referee usurped the role of the trial court by ruling, *sua sponte*, on the objections of the appellee."

In this first assignment of error, appellant claims the referee possessed no authority to amend her report after appellee filed his objections to that report, *i.e.*, only the trial judge possessed the authority to modify the referee's original report after appellee filed his objections. Appellant did not, however, raise this issue at the trial level in her statement of objections to the referee's amended report.

Civ.R. 53(E)(6) states in pertinent part as follows:

"On appeal, a party may not assign as error the court's adoption of a referee's finding of fact unless an objection to that finding is contained in that party's written objections to the referee's report."

In *Proctor v. Proctor* (1988), 48 Ohio App.3d 55, 63, 548 N.E.2d 287, 295, the court upheld this principle and stated as follows:

"Accordingly, we hold that a claim that the trial court erred in adopting a referee's finding of fact, including a claim under Civ.R. 53(E)(5) that a referee's finding of fact was not sufficient for the trial court to make an independent analysis of the issues and to apply appropriate rules of law in reaching a judgment, *is waived on appeal unless an objection to that finding is contained in that party's written objections to the referee's report.*" (Emphasis added).

█ In the case *sub judice*, appellant did not challenge the authority of the referee to amend her original report when appellant filed her statement of objections to the referee's amended report. Accordingly, appellant waived this assignment of error on appeal and for this reason, the first assignment of error is overruled.

Assuming, *arguendo*, the first assignment of error was properly before this appellate court, the assignment would lack merit. Civ.R. 53 defines the duties of the referee and the trial court with respect to matters heard before a referee and the reports generated from such proceedings.

Civ.R. 53(C)(3) specifically delineates the authority of the trial referee and states in pertinent part as follows:

"[T]he referee shall exercise the power to regulate all proceedings in every hearing before the referee as if by the court and to *do all acts and take all measures necessary or proper for the efficient performance of the referee's duties* * * *." (Emphasis added).

Civ.R. 53(E)(2) enumerates the options available to the trial judge with respect to filed objections to the report of the referee and states in pertinent part as follows:

"Upon consideration of the objections, the court may adopt, reject, or modify the report; hear additional evidence; return the report to the referee with instructions; or hear the matter itself."

In *Ivywood Apts. v. Bennett* (1976), 51 Ohio App.2d 209, 213, 5 O.O.3d 351, 353, 367 N.E.2d 1205, 1208, the court stated as follows:

"[A] hearing before a referee *is not fair and complete* until a judge, following independent and careful consideration, along with an opportunity to review objections, has acted upon the referee's report." (Emphasis added). See *Com-*

*plete Gen. Constr. Co. v. Ohio Dept. of Transp.* (1990), 62 Ohio Misc.2d 103, 593 N.E.2d 487.

■  Although the facts as well as the issues raised in *Ivywood Apts.* and *Complete Gen. Constr., supra,* are distinguishable from those in the case *sub judice,* the principle is applicable to all cases which are referred to a court referee for recommendation.  When *Ivywood Apts.* and *Complete Gen. Constr.* are analyzed in conjunction with the mandate of Civ.R. 53(C)(3), it is reasonable to conclude that until a trial judge has acted upon a referee's report, *i.e.,* until a judge has acted in accordance with Civ.R. 53(E)(2), a referee may freely correct mistakes of fact or law contained in the referee's report.

Civ.R. 60(A) provides support for this conclusion and states in pertinent part as follows:

"Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders."

Although this rule clearly grants authority to the "court," rather than to the "referee," the principle applies to referees when the application of Civ.R. 60(A) serves the interests of judicial economy without causing unfair prejudice to other parties to the action.

■  In the case *sub judice,* based upon the objections to the referee's report filed by appellee, the referee corrected her original report to reflect that the Harbeitner children resided with their father rather than with their mother.  In harmony with this correction, the referee then adjusted appellee's child support obligation to reflect the required obligation placed upon the residential parent.  In essence, the referee corrected a clerical mistake in her original report along with the error that arose from that mistake in accordance with Civ.R. 60(A).

Such action by the referee clearly served the interests of judicial economy since it can reasonably be assumed the trial judge, upon consideration of appellee's objections to the referee's report, would have eventually returned the report to the referee for such correction as was made or corrected the error herself.  The referee, by correcting the errors herself, reduced the amount of time that would have otherwise been required to amend the report and accomplished this without requiring the trial judge to invest her personal time in the matter.

Since it can reasonably be presumed the trial judge would have either corrected the error herself or returned the report to the referee for correction, appellant was not unfairly prejudiced by the actions of the referee.  Moreover, had the error not been corrected by the trial judge or the referee, appellant

would have been unjustly enriched by the error. Therefore, even if the referee's correction would have been error, which it is not, it would have constituted "harmless" error.

Appellant argues, however, that the referee exceeded her authority under Civ.R. 53 by effectively "ruling" on appellee's written statement of objections to the referee's report. Appellant correctly contends that only the trial judge may "rule" upon a party's objections to the referee's report pursuant to Civ.R. 53(E)(1). Appellant's analysis of what occurred is flawed.

In *Nolte v. Nolte* (1978), 60 Ohio App.2d 227, 231, 14 O.O.3d 215, 218, 396 N.E.2d 807, 811, the court stated as follows:

"[R]eferees serve only in an advisory capacity to the court and have no authority to render final judgments affecting the rights of parties."

The referee did not "rule" on appellee's objections for the simple reason that the referee does not possess the power or authority to "rule" on anything. Rather than making a "ruling," the referee "[took] all measures necessary or proper for the efficient performance of the referee's duties * * *." Civ.R. 53(C)(3).

Clearly, the referee in the case *sub judice*, acted in accordance with *Ivywood Apts.* and *Complete Gen. Constr.*, *supra*, when she corrected the error before the report was presented to the trial judge for consideration. The referee possessed the authority to correct errors of law or fact in her report before the hearing was "fair and complete," *i.e.*, before the judge acted upon the report. *Id.* Since appellant did not raise this issue in her objections to the report of the referee, and in accordance with the foregoing analysis, appellant's First Assignment of Error is overruled.

Appellant's Second Assignment of Error follows:

"The trial court committed reversible error by accepting and approving the amended referee's report, which was based on evidence not properly before the referee or the trial court."

This assignment lacks merit.

Appellant maintains she and appellee agreed, in their written waiver of a full hearing, to a joint request that the referee render her decision based solely upon the foregoing six documents that were attached to the waiver agreement. She essentially claims that when the referee admitted into evidence appellee's assertion, contained in his statement of objections to the referee's report, that he rather than appellant was the residential parent of the two Harbeitner children, the referee, to quote appellant's brief, "[w]ent outside of the closed universe of factual information agreed to by the parties." Appellant, therefore, claims she

was denied notice and opportunity to refute the assertions contained in appellee's statement of objections to the referee's report. Appellant's analysis is flawed.

As noted *supra*, the record before this appellate court contains the divorce decree with its specific child custody arrangements agreed to by the Harbeitners. The referee possessed the right and the duty to examine the record before her in order to arrive at a just and reasonable determination of the obligations at issue in the case *sub judice*.

Civ.R. 53(C)(3) states in pertinent part as follows:

"The referee may do all of the following:

" * * *

"(2) Require the production before the referee of *evidence upon all matters* embraced in the reference, including the production of all books, papers, vouchers, documents, and writings applicable thereto." (Emphasis added).

"Evidence upon all matters" certainly includes the trial record, upon which the referee must rely in order to prepare a report and make recommendations that are founded in fact and consistent with prior court decisions. The referee did not exceed the "closed universe of factual information agreed to by the parties" since the "closed universe" contained the record of prior hearings, trials and determinations with respect to the within case.

Appellant's allegation that she was denied notice and opportunity to refute appellee's assertions, contained in his statement of objections to the referee's report, is proved false by the record now before this appellate court. On August 7, 1992, appellant not only had the opportunity to refute appellee's assertions with respect to the residency of the children, but did, in fact, do so when she filed her own statement of objections to the amended report of the referee.

For the foregoing reasons, this Second Assignment of Error is without merit and is overruled.

Appellant's Third, Fourth and Fifth Assignments of Error will be considered together:

"The trial court committed reversible error by overruling the appellant's objections to the amended referee's report when the referee's report failed to set out the necessary factual information to support the findings and recommendations made, so the trial court can independently analyze the underlying facts.

"The trial court committed reversible error by failing to make an independent analysis of the referee's report.

"The trial court abused their [*sic*] discretion by overruling the appellant's objection to the amended referee's report as the amended referee's report

contained recommendations which were against the weight of the evidence presented and stipulated to."

These assignments lack merit.

Appellant claims the trial court did not comply with the mandate of Civ.R. 53(E)(5), which states as follows:

"The report of a referee shall be effective and binding only when approved and entered as a matter of record by the court. The referee's findings of fact must be sufficient for the court to make an independent analysis of the issues and to apply appropriate rules of law in reaching a judgment order. The court may adopt the referee's recommendations about appropriate conclusions of law and the appropriate resolution of any issues. However, the court shall determine whether there is any error of law or other defect on the face of the referee's report even if no party objects to an error or defect. The court shall enter its own judgment on the issues submitted for action and report by the referee."

■ Appellant first alleges the report of the referee did not contain sufficient findings of fact upon which the trial judge could make an independent analysis of the issues and resolve them with appropriate rules of law. In *Nolte, supra,* 60 Ohio App.2d at 229–231, 14 O.O.3d at 216–217, 396 N.E.2d at 810–811, the court stated as follows:

" 'The report of a referee requires at a minimum a *statement of the basis of his findings and recommendations* in order that the trial court be able to make an independent analysis of the validity of the report before approving it and entering judgment.'

" * * * *

"Thus, when a referee's report contains a conclusion regarding an issue in the case, the facts that lead to that conclusion must also be included in the report.

" * * * *

"[T]he report must contain not only a recommendation of the court's order but also *the facts presented to the referee* upon which that order is based. * * * [T]he trial judge may not render judgment unless and until he has independently analyzed the case; he is in no position to make such an analysis unless the referee's report includes *a statement of the facts relevant to the issue before the court.* * * * Whenever a referee's report contains a legal conclusion but omits *the facts necessary to reach that conclusion,* the judgment is voidable." (Emphasis added.)

In the case *sub judice,* the amended report of the referee contains nearly three entire sheets of factual findings, single-spaced and typed, beginning at the bottom of page 2 and concluding in the middle of page 5. Clearly, the amended referee's

report satisfied the requirements of *Nolte,* presenting facts "[s]ufficient for the court to make an independent analysis of the issues and to apply appropriate rules of law in reaching a judgment order." Civ.R. 53(E)(5).

■ Appellant also claims the trial court did not "[m]ake an independent analysis" pursuant to Civ.R. 53(E)(5) but, rather, "rubber-stamped" the referee's report. In *DeSantis v. Soller* (1990), 70 Ohio App.3d 226, 232–233, 590 N.E.2d 886, 890–891, the court stated as follows:

"[T]he trial court must undertake the equivalent of a *de novo* determination, in light of any filed objections, when independently assessing the facts and conclusions contained in the report of a referee. Such *de novo* determination is based upon the referee's findings of fact unless a transcript of evidence is filed.

"The trial court should not adopt challenged referee's findings of fact unless the trial court fully agrees with them—that is, the trial court, in weighing the evidence itself and fully substituting its judgment for that of the referee, independently reaches the same factual conclusions."

In the case *sub judice,* since no transcript was made of the hearing, the trial judge was required to make the equivalent of a *de novo* determination based upon the referee's findings of fact. On September 29, 1992, a journal entry, separate and distinct from the report of the referee and signed by the trial judge, was filed adopting the report and recommendations of the referee.

In the absence of evidence to the contrary, this appellate court presumes regularity in the trial court. Appellant offers no evidence that the trial court did not "[e]nter its own judgment on the issues submitted for action and report by the referee." Civ.R. 53(E)(5). This court, therefore, presumes the trial court weighed the evidence contained in the amended referee's report, substituted its own independent judgment for that of the referee and ultimately reached the same conclusions as were contained in the amended report of the referee.

■ Appellant further alleges the recommendations contained in the amended report of the referee were against the manifest weight of the evidence. In *DeSantis, supra,* 70 Ohio App.3d at 232, 590 N.E.2d at 890, the court stated as follows:

"Findings of a referee having support in the evidence are to be given the force and effect of a verdict of a jury or the findings of a court in a nonjury case, and, as a general rule, will not be disturbed by a Court of Appeals unless manifestly against the weight of the evidence."

R.C. 3113.215 controls the calculation of a child support obligation. In *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 141–142, 601 N.E.2d 496, 497–499, the Ohio Supreme Court stated as follows:

"R.C. 3113.215(B)(1) requires that a calculation of the amount of an obligor's child support obligation must be made 'in accordance with' the basic child support schedule set forth in R.C. 3113.215(D), the applicable worksheet in R.C. 3113.-215(E) or (F), and other requirements of the law. * * * R.C. 3113.215(B)(1) further provides that the amount calculated using the schedule and worksheet (through line 18 of the worksheet) is 'rebuttably presumed' to be the correct amount of child support due and that that amount must be ordered to be paid *unless* both of the following apply:

" '(a) The court, after considering the factors and criteria set forth in division (B)(3) of this section, determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet, through line 18, would be unjust or inappropriate and would not be in the best interest of the child.

" '(b) The court enters in the journal the amount of child support calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet, through line 18, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination.'

" * * *

"[A] worksheet must *actually* be completed for the order or modification of support to be made. The responsibility to ensure that the calculation is made using the schedule and worksheet rests with the trial court. * * *

"Accordingly, we hold that a child support computation worksheet required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215 must actually be completed and made a part of the trial court's record." (Emphasis *sic.*)

In the case *sub judice,* the referee did comply with R.C. 3113.215 and *Marker, supra,* by using the foregoing child support computation worksheet which is contained in the record on appeal before this court. The child support modification, made pursuant to the amended report of the referee and ordered by the trial court on September 29, 1992, is, therefore, "rebuttably presumed to be the correct amount of child support due."

In *Rohrbach v. Rohrbach* (1988), 40 Ohio App.3d 92, 93, 531 N.E.2d 773, 774, the court stated as follows:

"The record reveals no abuse of discretion by the trial court in increasing appellant's child support obligation, especially when neither party adduced any evidence at the hearing which would warrant a deviation from the figure derived from the objective, independent standard * * *."

In the case *sub judice,* as in *Rohrbach, supra,* there is no evidence which would warrant a deviation from that figure calculated by the referee, using the child support worksheet mandated by statute, and contained in her amended report. Therefore, the conclusions contained in the amended report of the referee were not against the manifest weight of the evidence and the trial court did not abuse its discretion when it adopted the amended report of the referee. Based upon the foregoing analysis, the third, fourth and fifth assignments of error are overruled.

*Judgment affirmed.*

PORTER, J., concurs.

HARPER, P.J., concurs in part and dissents in part.

THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.

HARPER, Presiding Judge, concurring in part and dissenting in part.

I respectfully dissent in part from the majority's disposition of this case. Specifically, appellant's third, fourth and fifth assignments of error are sustainable as the referee's report was incomplete pursuant to R.C. 3113.215(B) and the Supreme Court of Ohio's decision in *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496. I otherwise concur in the majority's analysis of appellant's First and Second Assignments of Error.

In *Marker,* the court directly addressed the technical requirements of calculating child support obligations as follows:

"A child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215, must actually be completed and made a part of the trial court's record." *Marker,* paragraph one of the syllabus.

The court explained that without the worksheet and strict compliance with the technical requirements of R.C. 3113.215, an appellate court is incapable of reviewing the modification of support adequately. *Id.* at 142, 601 N.E.2d at 498; see, *Junke v. Junke* (June 1, 1993), Cuyahoga App. No. 62461, unreported, 1993 WL 204619; *Pournaras v. Pournaras* (Apr. 8, 1993), Cuyahoga App. No. 62285, unreported, 1993 WL 106973. The referee herein did incorporate the computation worksheet prepared by the parties which indicates appellee's monthly child support obligation as $601.74.

Further, R.C. 3113.215(B)(1) creates a rebuttable presumption that the amount of child support calculated under the guidelines is the correct amount. Two conditions have to be met in order to deviate from this amount. First, the

amount must not be in the best interest of the child, and it must be unjust and inappropriate, as determined by looking at the factors set forth in R.C. 3113.-115(B)(3). R.C. 3113.215(B)(1)(a). Second, findings of fact must be included to support the new determination. R.C. 3113.215(B)(1)(b). The *Marker* court, therefore, emphasized not only that a completed worksheet be included in the record, but that *any deviation from the schedule be referenced in the court's journal entry with supporting findings of fact. Marker,* paragraph three of the syllabus.

The factors to be considered when determining whether the presumably correct child support amount is unjust, inappropriate and not in the best interest of the child, as provided in R.C. 3113.215(B)(3), are as follows:

"(a) Special and unusual needs of the children;

"(b) Obligations for minor or handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;

"(c) Other court-ordered payments;

"(d) Extended times of visitation or extraordinary costs associated with visitation, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through line 18, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of companionship or visitation granted by court order;

"(e) Mandatory deductions from wages other than taxes, social security, or retirement in lieu of social security, including, but not limited to, union dues;

"(f) Disparity in income between parties or households;

"(g) Benefits that either parent receives from remarriage or sharing living expenses with another person;

"(h) The amount of federal, state, and local taxes actually paid by a parent or both of the parents;

"(i) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, or clothing;

"(j) Any other relevant factor * * *."

The referee, in her report dated February 26, 1992, recommended that appellee's child support obligation be $561 per month. In her July 1992 amended report, the referee recommended that the child support obligation be reduced to $408 per month after taking "judicial notice of the Ohio Child Support Schedule (OCSS)" and calculating a monthly support obligation of $601.20.

This court must presume, as required to do so by statute, that the child support calculation in the worksheet is correct, meaning appellee's child support obligation is $601.74 per month. As stated *supra*, the referee deviated from this amount by first recommending a child support obligation of $561 per month and then $408 per month in her July 31, 1992 report. In support of the modification and subsequent deviation, the referee stated:

" * * * Note parties' guideline worksheet which is incorporated. The parties' combined income is $34,610.77 [ ($8,900.00 − $2,000.00) + ($29,025.25 − $1,314.48) = $34,610.77]. The Plaintiff claims an expense of $1,110.00 annually after the tax credit for work related childcare and the Defendant claims $1,314.48 annually for medical insurance premiums. The Plaintiff [*sic*] earns 80% of the parties' combined income. The OCSS recommends a combined child support obligation of $7,908.00 per year for two (2) children. The Referee finds the adjusted child support obligation after work related childcare is $9,018.00 ($7,908.00 + $1,110.00 = $9,018.00). The Defendant's annual obligation is $7,14.40 for two (2) children and the Plaintiff's obligation is $1,803.60. The parties [*sic*] adjusted income after exchange of child support is $14,114.40 for the Plaintiff ($6,900.00 + $7,214.40) and $20,496.37 for the Defendant ($27,710.77 − $7,214.40)."

However, the referee further concluded:

"The Referee has taken the factors of O.R.C. 3109.05 (child support) and O.R.C. 3113.215(B)(3) into consideration in reaching a recommendation. The Referee finds after consideration of these factors that the above amount of support would be unjust or inappropriate to the children and Defendant where the children are pursuant to the joint provisional custody plan in the Defendant's custody and care half of the time and would not be in the best interests of the minor children where the Defendant's financial resources are reduced so as to limit his ability to care for the children. This is particularly true when Defendant has the children overnight and is the primary caretaker. Nonetheless, the Referee finds Plaintiff's expenses, including but not limited to rent and utilities for the children continue.

"Based on the foregoing, the Referee recommends that the Defendant pay to the Plaintiff $400.00 per month or $200.00 per month per child (2) in child support. * * *"

It is apparent from reading the referee's recommendation that there are no facts supporting the deviation from the child support obligation as calculated under the guidelines. The referee refers to appellee as the primary caretaker in support of the nearly $200 deviation. However, it is obvious to me that the children spend more waking hours with appellant—appellant takes care of the children on alternate weekends and, during the week, they stay with her from

6:30 a.m. to 3:30 p.m. The referee fails to explain why nearly $200 was deducted from the child support obligation, a completely unsubstantiated figure, rather than, *e.g.*, $150 or $100. Consequently, there is no evidence in the record which supports her general conclusion that a support payment of $601.74 would restrict appellee's ability to care for the children. See *Zmudzinski v. Shaffer* (Apr. 23, 1992), Cuyahoga App. No. 62494, unreported, 1992 WL 83860 (absent a supporting factual basis for child support payments, a referee's report is insufficient as a matter of law). The trial court thus arbitrarily adopted an assumption made by the referee. See *Rutti v. Beal* (July 30, 1992), Cuyahoga App. No. 60889, unreported, 1992 WL 181707. Further, the court did not mention the deviation in its journal entry and consequently failed to support the deviation with findings of fact in accordance with *Marker.* See *Junke, supra,* (trial court's child support determination reversed where deviation ordered to compensate father for travel expenses but no evidence was presented as to how much visitation would cost the parties, or as to whether visitation actually occurred).

The majority reviews the referee's amended report and observes that it "contains nearly three entire sheets of factual findings, single-spaced and typed, beginning at the bottom of page 2 and concluding in the middle of page 5." It then concludes, "[c]learly, the amended referee's report satisfied the requirements of *Nolte* [*v. Nolte* (1978), 60 Ohio App.2d 227, 14 O.O.3d 215, 396 N.E.2d 807], presenting facts '[s]ufficient for the court to make an independent analysis of the issues and to apply appropriate rules of law in reaching a judgment order.'" The language found in *Nolte* which, in part, led to the majority's conclusion follows:

"[T]he trial judge may not render judgment unless and until he has independently analyzed the case; he is in no position to make such an analysis unless the referee's report includes *a statement of the facts relevant to the issue before the court* * * *

"Whenever a referee's report contains a legal conclusion but *omits the facts necessary to reach that conclusion, the judgment is voidable.*" (Emphasis added.) *Id.* at 231, 14 O.O.3d at 217, 396 N.E.2d at 810–811.

The majority focuses on the length of the referee's factual findings rather than the substance of them. Just because the referee writes findings of fact over two and one-half pages long, it does not necessarily follow that these findings of fact are "relevant to the issue before the court." The issue here is whether the evidence presented to the court supported a deviation from the child support obligation calculated pursuant to statutory guidelines. Only one paragraph discusses R.C. 3113.215(B)(3) and that paragraph fails to present findings of fact, as discussed *supra*, to support the deviation recommended and then adopted by the trial court.

To repeat, it is obvious that the trial court adopted the referee's recommendation that the statutory "presumed to be correct" child support amount be deviated from in this case. The majority's statement that "there is no evidence which would warrant a deviation from that figure calculated by the referee, using the child support worksheet mandated by statute, and contained in her amended report" is, therefore, curious under these circumstances. The majority cites that portion of *Rohrbach v. Rohrbach* (1988), 40 Ohio App.3d 92, 531 N.E.2d 773, which states, "neither party adduced any evidence at the hearing which would warrant a deviation from the figure derived from the objective, independent standard." The majority appears to be under the mistaken impression that no deviation occurred or it has forgotten that a deviation of nearly $200 was recommended by the referee and subsequently adopted by the trial court. The majority's final conclusion that the modification of child support to $408 per month was not against the manifest weight of the evidence is thus illogical because it finds no evidence to support a deviation from the schedule. It affirms this deviation nonetheless by overruling appellant's Third, Fourth and Fifth Assignments of Error. In light of *Marker* and R.C. 3113.215(B)(3) guidelines, my analysis reveals that appellant's allegation that the referee erred in recommending a deviation from the child support guidelines, and the trial court erred in adopting the recommendation is correct. I would have thus sustained appellant's Third Assignment of Error.

Appellant for her Fourth Assignment of Error claims that the trial court erred in "rubber-stamping" the referee's report. This assignment of error is sustainable based upon the ruling in the third assignment of error. If the referee's report was insufficient with regard to a proper statement of factual findings, the trial court could not conduct a de novo review of the report as required by Civ.R. 53(E)(5). See *DeSantis v. Soller* (1990), 70 Ohio App.3d 226, 590 N.E.2d 886 (" * * * trial court must undertake the equivalent of a de novo determination, in light of any filed objections, when independently assessing the facts and conclusions contained in the report of a referee").

Appellant's Fifth Assignment of Error is likewise sustainable as she argues that the referee's findings and conclusions were against the manifest weight of the evidence, and consequently, the trial court erred in the same respect. Since the referee's report does not contain factual information which supports the deviation, the deviation is against the weight of the evidence as child support calculations under the statute are presumed to be correct.

I accordingly dissent in part from the majority's decision.