OPINION
Daniel Luedtke appeals from the judgment of the Montgomery County Common Pleas Court wherein he was granted a divorce from appellee, Anna L. Luedtke.
The Luedtkes were married on August 5, 1978 and had three children, Jason, born September 30, 1981, Adrianne, born November 16, 1983, and Bradley, born July 30, 1986.
Mrs. Luedtke was working part-time at Kohl's Department Store when she filed for the divorce in February 1998. She went to full time status in late 1998 and her projected earnings for 1999 were $16,245 including anticipated overtime.
Mr. Luedtke is employed by the City of Dayton as a lieutenant on the Dayton Fire Department. As a firefighter he is scheduled to work nine days per month, and he had projected earnings of $55,000.00 for 1999, not including overtime. Appellant began his employment with the City of Dayton shortly after the parties were married in 1978. As a consequence of his employment, Mr. Luedtke accumulated approximately $51,800 in an Ohio Public Employer Deferred Compensation Account. Additionally, the appellant is a member of the Police and Firemen's Pension Fund.
The parties jointly own a home in the City of Dayton with a fair market value of $95,000. After subtracting the first mortgage due Huntington Bank, the total marital equity in the home is $75,000. During the course of these proceedings Mr. Luedtke cashed in an IRA which had a value of $10,720.
The parties' children, Jason, Adrianne, and Bradley all attended Queen of Martyrs parochial elementary school. At the time of the trial of this matter Adrianne was the only child attending Chaminade-Julienne High School. Chaminade-Julienne is a private parochial school.
The trial court granted the parties a final decree of divorce on July 8, 1999. Custody of the minor children was awarded to Mrs. Luedtke and Mr. Luedtke was obligated to pay $344 per month per child pursuant to the child support guidelines.
Mr. Luedtke was also ordered to pay 79% of the private school tuition and "related costs" for the children which the court calculated to be $3,800 per year. The present value of appellant's pension less the Social Security offset, was determined to be $24,593.
The trial court issued a "stalking order" requiring the appellant, as a state pension fund member, to pay appellee the coverture fraction of the gross amount of every pension, disability, or other cash benefit which he becomes eligible to receive from the state pension fund at any time and in any amount. The trial court also ordered the appellant to pay spousal support in the amount of $800 per month for seven years subject to the continuing jurisdiction of the court.
In his first assignment of error, appellant contends the trial court abused its discretion in ordering him to pay the childrens' private school tuition in addition to paying child support. Appellant contends that private schooling is a luxury and therefore he cannot be required to pay for this schooling absent an agreement between the parties. Appellee argues that it is well established that a court may order a divorced parent to pay some or all of a private school tuition.
In Brock v. Brock (November 17, 1995), Mont. App. 15075, unreported, this court rejected the appellant father's contention that the trial court lacked authority to order him to pay for the private school tuition of his two children who were in the custody of their mother. In that case the trial court found that the parties had been educating their children at a private school at the time of the parties' divorce. The court ordered that the costs of the private school tuition be split between the parties in proportion to their incomes. The father was an emergency room physician earning $154,000 a year.
In affirming the order of the trial court, we noted that R.C. 3115.215(B)(3) was particularly on point. That provides the court may deviate from the child support guidelines "when the need and capacity of the child for an education and educational opportunities that would have been available to him had the circumstances required a court order for his support not arisen."
We noted that had the Brocks not found it necessary to end their marriage, it is clear that their children would have continued to attend a private school. We found that the trial court could have reasonably determined that the continuation of that private schooling was something that would both be in the interest of the children and affordable by the parties.
Mrs. Luedtke testified that all three of her children attended parochial grade school and it was her and her husband's desire that the children attend the parochial high school, Chaminade-Julienne. (Tr. 24). The appellant did not dispute Mrs. Luedtke's testimony when he testified. The trial court did not abuse its discretion in ordering that appellant pay for the childrens' private school. The first assignment of error is overruled.
In his second assignment appellant argues the trial court erred in not clearly defining his obligation to pay for the private schooling of his children because the court included tuition and "related costs." Appellant contends the term "related costs" is vague and unenforceable.
We disagree. The court's order provides that appellant shall be responsible for 79% of the private school tuition and related costs which the court calculated to be a fixed amount of $3,800 per year.
The appellant also complains that the court's order does not limit the childrens' schooling to Chaminade-Julienne. He contends the court's order permits the appellee to enroll the children in a more expensive private school. He also complains that the order leaves him susceptible to tuition increases at Chaminade-Julienne. We believe this assignment to be meritless. There is no indication appellee intends to enroll her children in any other school but Chaminade-Julienne. In any event, the present support order limits appellant's obligation to $3,800 a year for the childrens' private schooling. The order is subject to further order of the court to reflect a change in the circumstances of all the parties concerned. The second assignment of error is overruled.
In his third assignment, appellant contends the trial court abused its discretion in not deviating from the statutory child support guidelines. He contends the trial court should have used his "taxable" income available to him after his mandatory pension contribution in determining his child support obligation particularly since it ordered him to pay his children's private school tuition.
It is clear that the child support guidelines do not specifically permit an adjustment to a party's gross income for a mandatory pension contribution. R.C. 3113.215(B)(3) permits the trial court to deviate from the support schedule if the court finds the amount ordered would be unjust or inappropriate and would not be in the best interest of the child. The court may consider whether the parent subject to the support order makes significant in-kind contributions such as direct payments for lessons, sports equipment, schooling, or clothing. See, R.C.3113.215(B)(3)(j).
The amount of support calculated under R.C. 3113.215 is rebuttably presumed to be correct unless there is evidence warranting deviation. Harbertner v. Harbertner (1994), 94 Ohio App.3d 485. There is no evidence the appellant's children did not need the child support the guidelines provide for their benefit. The additional support ordered was to meet the private schooling we previously determined was in their best interest. Any reduction or deviation downward from the guidelines would not be in the children's best interests. This assignment is likewise overruled.
In his fourth assignment, appellant contends the trial court erred in entering a "stalking order" upon his public pension. A "stalking order" allows a state pension fund member to collect his pension at retirement and then pay a certain percentage of the pension monthly to his ex-spouse. The "stalking order" was necessary because the state pension was not subject to a QDRO. The appellant contends the trial court abused its discretion in entering the stalking order when there were assets available to pay the appellee the present value of her interest in his pension. Appellant notes the parties' total assets including the marital residence, the deferred compensation program, and the Police and Fireman's Pension Fund amounted to $151,393. Appellant argues that the court could have awarded appellee her one-half interest in the parties' property by awarding her the marital residence and the remaining $696. Appellee had separately been awarded one-half of the parties IRA that had previously been liquidated and attorney's fees. Appellant argues that a lump sum distribution appropriately disentangles the parties so as to create a finality and conclusion to their marriage. Citing Hoyt v. Hoyt (1990), 53 Ohio St.3d 177. Appellant argues that the "stalking order" will require the parties to hire experts to determine the appropriate Social Security offset when he retires. Appellee argues that while the "stalking order" may not perfectly disentangle the parties financially, the court certainly didn't abuse its discretion in entering such an order.
The trial court notes in its final judgment that "stalking orders" have been adopted only as a last resort by other Ohio courts. The court also notes that this mechanism presents problems that any court should be very reluctant to impose upon the divorcing parties. While the trial court acknowledged that offsetting the present value of the nonemployee spouse's share with other marital property would serve as well as a QDRO, the court found that there were not sufficient assets to offset the pension available. The record however clearly discloses that marital property is available to offset the present value of the nonemployee spouse's share. Appellant's suggestion that the martial residence be awarded appellee along with an order that appellant pay the balance of $696 would provide the necessary offset. The fourth assignment of error is therefore sustained.
In his fifth assignment, appellant argues the trial court abused its discretion in ordering him to pay appellee $800 a month in spousal support. Appellant contends the trial court should not have considered his gross income in setting the spousal support order without taking into account that his "mandatory" pension contribution reduced his disposable income to $48,510.31. He also contends that the trial court should not have determined that $5,000 was available to him in overtime pay when he testified he does not have a part-time job because he is caring for his elderly father. Appellant argues that the $9,600 a year spousal support obligation is unduly burdensome in light of his duty to pay $3,800 annually for his childrens' private school tuition. Appellant concedes the trial court is given broad discretion in determining the appropriate spousal support based on the particular circumstances of each case, and such determination will not be disturbed by the court absent an affirmative showing that the trial court abused its discretion.Cherry v. Cherry (1981), 66 Ohio St.2d 348. The trial court calculated that appellee would have available to her after implementation of all orders $32,200 compared to her budget of $35,500. Appellant would have $25,600 compared to his budget of $33,000. These calculations clearly demonstrate the financial havoc divorce visits upon the parties and their dependents.
We cannot say the trial court acted arbitrarily in considering appellant's gross income in establishing the spousal support order. There was testimony presented that appellant made $4,053 in non-city earnings in 1997 and $3,350 in non-city earnings in 1996. Appellant testified he made $54,925 in 1998 without overtime. Appellant testified he had available to him some overtime opportunities with the City of Dayton. He testified he did not have plans to work a part-time job as long as he had to care for his father who suffered from Alzheimer's. (Tr. 61).
It does appear the court has taken into account part-time income which the defendant did not receive in 1998 or 1999 and which income is not contemplated because of appellant's responsibilities in caring for his father. The appellant's fifth assignment of error is sustained in part.
The judgment of the trial court is Affirmed in part and Reversed in part and as Reversed is Remanded to the trial court to enter a lump sum judgment to account for appellee's interest in appellant's public retirement fund and to reestablish a new appropriate spousal support order.
FAIN, J., and YOUNG, J., concur.