[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] The parties' briefs include the caption "Miranda S. Keyes, Appellant, v. Brain L. Blakeman, Appellee." We, however, use the caption that appears on the trial court's final judgment entry.
 DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Pike County Common Pleas Court, Domestic Relations Division, judgment that designated Brian Blakeman, plaintiff below and appellee herein, the residential parent for the parties' minor child.
 {¶ 2} Miranda Blakeman (nka Keyes), defendant below and appellant herein, raises the following assignments of error for review: *Page 2 
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DESIGNATED APPELLEE-FATHER AS THE RESIDENTIAL PARENT FOR SCHOOL PURPOSES."
 SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT DESIGNATED APPELLEE-FATHER AS THE RESIDENTIAL PARENT FOR SCHOOL PURPOSES."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO CONSIDER ALL RELEVANT FACTORS WHEN DECIDING THAT A MODIFICATION OF THE PARTIES['] SHARED PARENTING PLAN WOULD BE IN THE BEST INTERESTS OF THE MINOR CHILD."
 {¶ 3} On July 20, 2004, the parties divorced. The trial court designated both parents as residential parents and approved their shared parenting plan.
 {¶ 4} On September 5, 2006, appellee filed a motion to modify the trial court's allocation of parental rights and responsibilities. Both parties filed proposed amended shared parenting plans and the trial court held a hearing to consider appellee's motion.
 {¶ 5} At the hearing, the guardian ad litem testified that although he could not make a final recommendation, he could advise the court about the parents' positive and negative factors. Both parents share equally strong and loving relationships with the child and both parents live in appropriate school districts, but the school near appellee's house is less than one mile from his home. The guardian ad litem explained that although appellant has relatives by marriage located near her current residence in Logan, Ohio, appellee has blood-relatives near his Pike County residence. The guardian ad litem further stated that appellant works in Chillicothe, her new husband *Page 3 
works in Grove City and that appellant is seeking employment in Logan so that she will be closer to home once the child starts school.
 {¶ 6} Appellee, on the other hand, has many options if he needs help to care for the child. Appellee's family and appellant's mother live in Pike County and both appellant and his new wife work in Pike County. The guardian ad litem also expressed concern that appellee may not promote visitation as easily as appellant, and that appellee did not bring the child to preschool on time.
 {¶ 7} Appellant testified that even if she is unable to find a job in Logan before the school year begins, her mother-in-law, father-in-law and two sisters-in-law live in Logan and can provide back-up emergency care. Appellant also testified that in the neighborhood where she now resides, the child does not play with other children and that she does not know any children who will attend the same school.
 {¶ 8} The court continued the remainder of the hearing to August 9, 2007 and by this point, appellant had established a new address in Logan and had found a new job in Lancaster, which is about twenty minutes from Logan. Appellant enrolled the child in the Logan Hocking School District and the latchkey program. She stated that she will take the child to school between 7:15 and 7:30 a.m., and her husband will pick up the child between 4:30 and 5:00 p.m.
 {¶ 9} Appellee testified that he enrolled the child in the Waverly City Schools and that either he, his wife, or a relative will provide care for the child before and after school. Appellee explained that the child enjoys a close relationship with her same-age step-sister and that, if the child attends Waverly City Schools, the children would be classmates.
 {¶ 10} The child told the trial court that she enjoys visits with both parents, but *Page 4 
appellee "has a lot more toys." The child did not express a school preference.
 {¶ 11} At the conclusion of the hearing, the trial court determined that designating appellee as the residential parent for school enrollment purposes will serve the child's best interests and that a change in circumstances had occurred: appellant relocated, changed her place of employment, and the child has reached school age. The court found that: (1) appellee continues to reside in the parties' former marital residence which is close to the school the child will attend if appellee is designated the residential parent; and (2) appellee's step-daughter, who is the same age as the parties' child, lives with appellee and his new wife and will attend the same school. In determining that designating appellee the residential parent will serve the child's best interests, the trial court noted that the child will attend a school "very close to her residence, in the same community in which she is already familiar and well adjusted, and at which school many of her young friends and relatives, in addition to her stepsister, will be attending school. When staying with [appellee] during the school week, [the child] will also have several adult relatives and family friends living close by who will be available to assist, if needed, on little notice, in case of any emergency."
 {¶ 12} Thus, the trial court approved an amendment to the shared parenting plan that: (1) designated appellee the residential parent for school enrollment purposes; (2) provided that the child shall primarily reside with appellee during the school year; (3) gave appellant three weekends per month during the school year for parenting time; (4) gave appellant parenting time one weekday each week during the school year; and (5) equally divided the summer vacation months. This appeal followed.
 {¶ 13} Appellant's three assignments of error all challenge the propriety of the trial court's decision to designate appellee the minor child's residential parent. Because *Page 5 
they are interrelated, we consider them together.
 {¶ 14} In her first assignment of error, appellant asserts that the trial court abused its discretion by designating appellee the residential parent because the court did not sufficiently consider the impact on the child's best interests. In particular, she argues that the court failed to consider: (1) the loss of companionship time with appellant; (2) that the child had previously spent the majority of the time with appellant; (3) that appellee sometimes worked a second shift and will not be home for the child on those occasions; (4) appellant's "pivotal" parental and educational role in the child's life; and (5) appellee's lack of "pivotal" parental and educational role. Appellant further argues that the court placed too much emphasis on the locale of the school and the child's relatives, rather than the loss of companionship time with appellant. Appellant contends that the court should have weighed her parental and educational role and the time that she spent with the child more heavily than the location of the school district and its proximity to various relatives and to appellee's home.
 {¶ 15} In her second assignment of error, appellant asserts that the trial court's decision improperly weighed the value of the school's location and the proximity of relatives and constitutes plain error.
 {¶ 16} In her third assignment of error, appellant asserts that the trial court failed to consider all relevant factors when it designated appellee the residential parent for school enrollment purposes. In particular, she argues that the court failed to consider the amount of time that the child spends with her parents and that appellant changed jobs so that she could be closer to the child's school.
 A Standard of Review *Page 6 {¶ 17} Appellate courts review trial court decisions regarding the modification of a prior allocation of parental rights and responsibilities with the utmost deference. Davis v. Flickinger (1995),77 Ohio St.3d 415, 418, 674 N.E.2d 1159; Miller v. Miller (1988),37 Ohio St.3d 71, 74, 523 N.E.2d 846. Consequently, we may sustain a challenge to a trial court's decision to modify parental rights and responsibilities only upon a conclusion that the trial court abused its discretion. Davis, supra. In Davis, the court defined the abuse of discretion standard that applies in custody proceedings:
 ""Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (Trickey v. Trickey [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)' [Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 550 N.E.2d 178, syllabus].
 The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As we stated in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81, 10 OBR 408, 410-412, 461 N.E.2d 1273, 1276-1277:
 `The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *
 * * *
 * * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal.'
 This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well."
Id. at 418-419.
 B *Page 7 
Standard for Modifying a Prior Allocation of Parental Rights and Responsibilities
A trial court's paramount concern when considering whether to modify the terms of a prior shared parenting plan incorporated into a divorce decree is the child's best interests. See R.C. 3109.04(E)[2];Fisher v. Hasenjager 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546. R.C. 3109.04(F)(1)(a)-(j) and R.C. 3109.04(F)(2)(a)-(e) set forth the factors that a court must consider when determining a child's best interests:
 (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding the child's care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to the child's home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 * * * {¶ 18} In the case at bar, our review of the record reveals that the trial court designation of appellee as the minor child's residential parent does not constitute an abuse of discretion. Although the court did not explicitly outline each of the best interest factors, the court did state that it considered the best interest factors. *Page 8 
Moreover, the record reveals that: (1) both parents want the child to attend the school in the district near their respective residences; (2) the child did not express a school preference; (3) the child interacts well with both step-families, has a step-sister close in age on appellee's side, and has both maternal and paternal grandparents near appellee's home; (4) the child seems well-adjusted to both homes, but is arguably more adjusted to appellee's home because it is the parties' former marital residence and several relatives live nearby; and (5) the parties have no physical or mental health issues. Here, the trial court weighed these factors and concluded that they favor appellee as the residential parent. The child will benefit from the multiple relatives near appellee's residence who are available to assist in case of an emergency. Moreover, either appellee, appellee's wife, or another relative will be able to provide care before and after school. In contrast, if the child attends school in appellant's school district, she will be in a latchkey program from early morning (between 7:15 and 7:30 a.m.) until late afternoon (between 4:30 and 5:00 p.m.). We believe that the trial court's preference for the child to be at her home in the mornings before school, and in the afternoons after school rather than attending a latchkey program, is in the child's best interests. Additionally, a trial court need not set out its analysis regarding every best interest factor if the court's judgment is supported by some competent, credible evidence. Coe v. Schneider, Washington App. No. 05CA26, 2006-Ohio-440, citing Bunten v. Bunten (1998),126 Ohio App.3d 443, 710 N.E.2d 757.
 {¶ 19} Appellant correctly observes that the trial court's decision results in a reduction in her parenting time. This reduction is necessary, however, when the trial court resolves the competing requests and so that the child may attend school. Obviously, when a trial court designates one parent as the residential parent, the other *Page 9 
parent will be deprived of a portion of his or her previously-enjoyed companionship time. In the case at bar, the geographical distance between the parents makes an equal or nearly equal parenting time distribution during the week nearly impossible.
 {¶ 20} Appellant also argues that she was the child's primary caregiver and that she spent more time with the child than appellee. The record, however, does not contain a great volume of evidence to support appellant's attempt to portray herself as the child's primary caregiver. Instead, as appellee notes, the record reveals that the parties shared parenting time with the child. Moreover, while we do not minimize appellant's role in potty-training, teaching the alphabet, counting, and curtailing pacifier use, we do not believe that these factors elevate her parental and educational role over that of appellee. Instead, both parties agree that the other is a capable and loving parent.
 {¶ 21} Appellant also argues that the trial court failed to consider her job change so that she could be closer to the child's school. It appears, however, that the court did consider this as a factor, but found that appellant does not have the same support system that appellee has in Pike County.
 {¶ 22} We also reject appellant's argument that the trial court's decision simply disfavors parents who do not live in a "hometown" school district. We recognize that nearly every allocation of parental rights will appear, in one manner or another, to favor one parent's situation over the other parents's situation. The record reveals that both appellant and appellee have great love and affection for their child and both provide loving and caring homes. Nevertheless, courts have the duty to make decisions and to resolve the issues in these difficult and emotionally charged circumstances.
 {¶ 23} Accordingly, based upon the foregoing reasons, we hereby overrule *Page 10 
appellant's assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, J. McFarland, J.: Concur in Judgment Opinion
[2] In the case sub judice, appellant focuses on the child's best interests. Appellee contends that R.C. 3109.04(E)(2) contains the appropriate standard. However, in modifying the shared parenting plan, the trial court appears to have relied upon R.C. 3109.04(E)(1). In addition to finding that the modification will serve the child's best interests, the court also found that a change in circumstances occurred and that the benefits of modifying the parties' parenting arrangement outweighs any harm. Regardless of whether R.C. 3109.04(E)(1) or (2) applies, the issue on appeal is whether the trial court erred by determining that designating appellee the residential parent for school enrollment purposes will serve the child's best interests. Appellant has not raised an argument regarding a change in circumstance. Thus, we decline to decide whether R.C. 3109.04(E)(1) or (E)(2) applies and, instead, focus on the best interest factors. *Page 1