[Cite as *Brokaw v. Brokaw*, 2012-Ohio-2630.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97477

---

## KARA BROKAW

### PLAINTIFF-APPELLANT

vs.

## KEVIN BROKAW

### DEFENDANT-APPELLEE

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-315403

**BEFORE:** Rocco, J., Stewart, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** June 14, 2012

**ATTORNEYS FOR APPELLANT**

Richard J. Stahl
Loretta A. Coyne
18051 Jefferson Park
Suite 102
Middleburg Heights, Ohio   44130

**ATTORNEY FOR APPELLEE**

Randall M. Perla
19443 Lorain Road
Fairview Park, Ohio 44126

KENNETH A. ROCCO, J.:

{¶1} Defendant-appellant Kevin Brokaw appeals from the order of the Cuyahoga County Court of Common Pleas, Domestic Relations Division (the "DR court") that overruled his objections to the magistrate's decision with respect to several motions filed by Kevin and his ex-wife, plaintiff-appellee Kara Brokaw, but also modified the magistrate's decision in certain respects.

{¶2} Kevin presents eight assignments of error. In the four that relate to his child support obligation, Kevin asserts the DR court lacked authority to order retroactive child support and improperly declined to deviate from the statutory guidelines. In the three assignments of error that relate to parenting, Kevin asserts that the DR court's denial of his request to modify the parenting schedule and designation of Kara as the residential parent for school purposes ("RPSP") both lack support. Finally, Kevin argues the DR court should have granted his motion for the appointment of a guardian ad litem ("GAL") for the children.

{¶3} After a review of the record, this court finds the DR court did not abuse its discretion in making its decisions with respect to child support and parenting. In addition, because Kevin did not mention the DR court's denial of his motion to appoint a GAL in his notice of appeal, this court cannot consider the issue he raises in his eighth assignment of error. The DR court's order, therefore, is affirmed.

{¶4} This is the second appeal resulting from the parties' divorce. In *Brokaw v.*

*Brokaw*, 8th Dist. No. 92729, 2010-Ohio-1053 ("*Brokaw I*"), this court discussed Kara's

appeal from the judgment entry of divorce and decided the parties' case in pertinent part

as follows.

Plaintiff-appellant, Kara Brokaw, appeals from a judgment of divorce that terminated her marriage to defendant-appellee, Kevin Brokaw. Prior to trial on the complaint, the parties [failed to settle these] differences: (1) the amount and effective date of child support; [and] (2) the amount and duration of spousal support * * * . We find that the court made several errors *when making child support calculations, so we reverse and remand that aspect of this case; we affirm in all other respects*.

* * * [In t]he second assignment of error [Kara] complains that the court erred by miscalculating *the child care costs* when completing the child support computation worksheet. Kara claims that the court *overstated Kevin's obligation for annual daycare expenses*, presumably with the result that his increased expenses diminished the amount of child support he would have to pay.

*The court incorporated into the divorce decree a separation agreement entered into by the parties. The separation agreement contained a shared parenting plan* in which the parties agreed that Kevin would assume liability for 70 percent of daycare costs for the parties' two children, and that Kara would assume liability for the remaining 30 percent cost of daycare.

At trial, Kara gave uncontradicted testimony that the child care costs were $1,640.20 per month, or $19,682.40 per year. Kevin's 70 percent obligation amounted to $13,777.68 and Kara's 30 percent obligation amounted to $5,904.72. In his testimony, Kevin confirmed that he paid $1,149.14 per month, or $13,789.68 per year, and that figure constituted 70 percent of the total cost.

Despite this evidence, *the court's child support guidelines computation sheet listed Kara's child care expenses as $5,910 and Kevin's child care expenses as $19,700. The stated figure for Kevin is plainly in error because it constitutes the entire amount of child care expenses, not Kevin's 70 percent share. We therefore sustain this assignment of error*.

*The third and fourth assignments of error raise issues relating to the court's factual finding that Kevin earned income of $120,000 per year*. Kara complains that * * * the court should have imputed income to him in the amount of $185,000 per year. *She also complains that * * * the court erred by using the $120,000 per year income amount to compute past due child support that had accrued before he took the reduction in pay*.

* * * *We find no error with the court's factual finding that Kevin* was not

voluntarily underemployed by *accepting* a *pay* cut to *$120,000 [after October 2008]*.

*** The court's findings of fact and conclusions of law state that Kevin earned an annual income of "$185,000 up until October 31, 2008." *The court made the child support order retroactive to December 1, 2007. But in doing so, the court failed to use Kevin's higher income during the period from December 2007 through October 2008. The child support computation worksheet appended to the divorce decree lists Kevin's annual gross income as $120,000, even though he earned $185,000 annually during the period from December 2007 through October 2008.*

*We thus find that the court erred by computing Kevin's retroactive child support and sustain this assignment of error.*

*** The sixth assignment of error is that the court erred by failing to award Kara temporary spousal support.

At the time she filed her complaint, Kara also filed a motion for support pendente lite. The parties settled Kara's pretrial motion for support pendente lite ***.

*** With no motion for support pendente lite before it, the court did not abuse its discretion by failing to order that which Kara had previously agreed to settle.

*** [W]e cannot say the court abused its discretion by refusing to award spousal support to Kara [as she argues in her seventh assignment of error].

*The eighth assignment of error is that the court erred by ordering a downward deviation in child support from that indicated by the child support guidelines.* The court ordered the deviation because the shared parenting plan adopted by the parties gave Kevin a number of overnight visitations that were "substantially greater than the standard visitation order." Kara maintains that the shared parenting plan only gave Kevin six additional nights per month during the school year, a number she believes is too insignificant to warrant a downward deviation from the child support guidelines.

The amount of child support calculated using the child support schedule is "rebuttably presumed" to be the correct amount of child support due. *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496. The party seeking to rebut the basic child support schedule calculation has the burden of presenting evidence that would demonstrate that the calculated award is unjust, inappropriate, and would not be in the best interest of the child. *Spencer v. Spencer*, 5th Dist. No. 2005-CA-00263, 2006-Ohio-1913, at ¶ 44; *Chittock v. Chittock* (Apr. 3, 1998), 11th Dist. No. 97-A-0042. The decision to deviate from the actual obligation is discretionary and will not be reversed absent an abuse of discretion. See *In re Custody of Harris*, 168 Ohio App.3d 1, 857 N.E.2d 1235, 2006-Ohio-3649, at ¶ 60-61.

R.C. 3119.24 states that in cases with shared parenting plans, the court "may" deviate from the amount that is calculated according to the child support schedule, but that the court must consider "extraordinary circumstances" and other factors or criteria if it deviates and it must enter in the journal that the amount would be unjust or inappropriate and would not in the best interest of the child, and it must enter findings of fact to support its determination. R.C. 3119.24(B) sets forth a nonexclusive list of factors that might constitute "extraordinary circumstances of the parents," including "(1)

The amount of time the children spend with each parent[.]"   See R.C. 3119.24(B)(1).

*The child support computation worksheet appended to the court's divorce decree indicated that Kevin's income constituted 61.54 percent of the parties' income.  As we noted in our discussion of Kara's second assignment of error, the child support computation worksheet erroneously stated that Kevin paid $19,700 in net child care costs, when that sum actually constituted the entire child care cost and not the 70 percent allocation that he agreed to pay.  This error would have caused Kevin's support obligation to be understated.  We therefore sustain this assignment of error to the extent that the misstatement of Kevin's obligation for child care expenses might have affected the court's decision to grant a downward deviation from the support guidelines.  On remand, the court should ensure the correctness of its support guidelines computations and then consider whether a deviation from the child support guidelines is warranted under the circumstances.*

This cause is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. * * * (Emphasis added.)

{¶5} Just prior to the release of this court's decision in *Brokaw I*, the parties filed several motions in the DR court.  These included Kara's January 2010 motions: (1) to terminate shared parenting; (2) for full custody of the parties' two children; and, (3) to modify Kevin's child support obligation in line with statutory guidelines, along with Kevin's March 2010 motions: (1) to modify the parenting schedule set out in the parties' shared parenting plan ("SPP"); and, (2) to designate him as the RPSP.

{¶6} After the decision in *Brokaw I*, Kara additionally filed in the DR court a formal motion for recalculation of Kevin's child support obligation.  A short time later, Kevin filed a motion seeking the appointment of a GAL for the parties' children.  On May 7, 2010, the DR court issued a journal entry denying the latter motion.

{¶7} In June 2010, Kara filed a "supplemental" motion to more specifically request the DR court to designate her as the RPSP.  In July 2010, the parties' outstanding motions, along with the matters remanded pursuant to *Brokaw I*, proceeded to a hearing before a magistrate.

{¶8} The record reflects that the magistrate waited nearly a year, until May 4, 2011,

before issuing his decision. In pertinent part, the magistrate made the following findings of fact and conclusions of law.

(1) Allocation of the child care expenses had been incorrectly calculated in the judgment entry of divorce, because the SPP called for Kevin to pay 70% of the $19,700.00 total annual cost rather than 100%.[1]

(2) As of the date of the hearing, the parties' child care expenses were $19,998.00 annually.

(3) Kevin's "income"[2] was $185,000.00 from December 2007 to October 2008, $120,000.00 from October 2008 to December 2008, $0 from January 2009 to July 2009 because he was unemployed, $85,000.00 from August 2009 to October 2009, and $125,000.00 from November 2009 to the date of the hearing.

(4) Kevin received $70,000.00 in severance pay in January 2009.

(5) The children had attended preschool in Independence at the time of the divorce, but the older child was ready for Kindergarten in August 2010, and, by the time of the hearing, both parents had relocated to different cities.

(6) Pursuant to *Brokaw I,* retroactive temporary "child" support was inappropriate because Kara had not invoked the DR court's jurisdiction for an award of "support

---

[1]As previously stated, this figure was set forth in *Brokaw I* as the cost at the time of the judgment entry of divorce.

[2] The magistrate apparently meant these figures to represent "annual" incomes rather than monthly incomes in spite of the fact that Kevin was not employed for a full year at any of these jobs.

pendente lite."

(7) Pursuant to the statutory guidelines, Kevin's monthly child support obligation at the time of the judgment entry of divorce "should have been $927.85," but this amount was not appropriate; therefore, for the period of November 26, 2008 through January 3, 2010, Kevin's obligation was $645.93 monthly.

(8) Pursuant to statutory guidelines, Kevin's "proper" monthly child support obligation after January 4, 2010 was $747.69, but this amount was not appropriate; therefore, the amount should be $450.00.

(9) Termination of the SPP was inappropriate.

(10) The best interests of the children would not be served by either modifying the SPP's parenting schedule or designating Kevin as the RPSP.

{¶9} Kevin filed objections to the magistrate's decision. Specifically, he challenged the decisions to designate Kara as the RPSP and to deny Kevin's request for a change to the parenting schedule. Kevin did not challenge the magistrate's calculations with respect to the parties' incomes.

{¶10} On October 3, 2011, the DR court issued its judgment entry in this case. After reviewing the magistrate's decision, the DR court found several errors that it corrected and overruled Kevin's objections.

{¶11} For instance, the DR court noted that Kevin's "annualized income" should be calculated as follows: $185,000.00 from the date the marriage ended until October 1, 2008, $120,000.00 for the remainder of 2008, $70,000.00 in 2009, and $125,000.00 after

January 1, 2010.

{¶12} Based upon these figures, the DR court recalculated Kevin's child support obligation according to the statutory guidelines. For the period of December 1, 2007 through September 30, 2008, his obligation was $1,263.01 per month. For the period from October 1, 2008 through December 31, 2008, his obligation was $804.10 per month. For the period from January 1, 2009 through December 31, 2009, his obligation was $764.13 per month. For the period after January 1, 2010, his obligation was $861.82 per month.

{¶13} Thus, the DR court determined that Kevin had been underpaying child support for the entire time. Moreover, because the parties' combined incomes had been over $150,000.00 at all times, the DR court noted it was not limited to the child support as calculated in the guidelines. Nevertheless, the SPP provided Kevin with significant time with the children, so the court found it was in the children's best interest to keep his support at "the presumed figures."

{¶14} The DR court determined that Kevin's share of the child care expenses at the time of the divorce caused his monthly child support obligation to amount to $820.18. The DR court agreed with the magistrate's decision with respect to making Kara the RPSP and to maintaining the original parenting schedule.

{¶15} Kevin filed his notice of appeal from the foregoing order. He presents eight assignments of error that will be addressed together where appropriate.

"I. The trial court abused its discretion by sua sponte ordering retroactive

child support pendente lite in violation of this Honorable Court's prior ruling.

"II.   The trial court abused its discretion by failing to deviate [from] the child support guidelines in violation of this Honorable Court's prior ruling and the rationale of the final decree.

"III.   The trial court abused its discretion by modifying the child support obligation between the date of the final decree and the Motion to Modifying [sic] filing.

"IV.   The trial court abused its discretion by modifying the child support obligation by ignoring relevant testimony and failing to deviate.

"V.   The trial court abused its discretion in its designation of Residential Parent for School Purposes by failing to adhere to the best interest standard.

"VI.   The trial court abused its discretion in its designation of Residential Parent for School Purposes by disregarding the testimony and evidence presented at court and the rationale of the courts within the state of Ohio.

"VII.   The trial court abused its discretion by failing to modifying [sic] the parenting time schedule.

"VIII.   The trial court abused its discretion by denying the request of Defendant/Appellant, Kevin Brokaw, for a guardian ad litem."

{¶16} Kevin argues in his first assignment of error that the DR court ignored this court's mandate in *Brokaw I* when it awarded Kara child support for the period between December 2007 and October 2008, i.e., the period the parties' divorce was pending.   He

argues that *Brokaw I* held Kara was not entitled to child support before their divorce became final. Kevin misreads the relevant portion of the opinion.

{¶17} *Brokaw I* clearly was addressing Kara's request for an award of *spousal* support pendente lite when it held she had waived that request. *Brokaw I* equally clearly ordered the DR court to recalculate Kevin's child support obligation for the period between when the divorce was pending *and forward*. Because the DR court followed the order issued in *Brokaw I* when calculating Kevin's child support obligation, his first assignment of error is overruled.

{¶18} In his second, third, and fourth assignments of error, Kevin argues that the DR court should have acceded to the magistrate's recommendation to allow Kevin downward deviations from the child support guidelines for the relevant time periods. Kevin essentially contends the magistrate's recommendation was entitled to a presumption of regularity. This court disagrees.

{¶19} Civ.R. 53 places upon the court the ultimate authority and responsibility over the magistrate's findings and rulings. *Hartt v. Munobe*, 67 Ohio St.3d 3, 615 N.E.2d 617 (1993). In ruling on objections to a magistrate's decision, the trial court is required to make a full and independent judgment of the referred matter, and should not adopt the findings of the magistrate unless the trial court fully agrees with them. *DeSantis v. Soller*, 70 Ohio App.3d 226, 232, 590 N.E.2d 886 (10th Dist. 1990). A trial court retains its authority to decide an issue independent of the magistrate, because the grant of authority to a magistrate does not affect a trial court's inherent jurisdiction. *Davis v. Reed*,

8th Dist. No. 76712, 2000 WL 1231462 (Aug. 31, 2000), citing *Proctor v. Proctor*, 48 Ohio App.3d 55, 59, 548 N.E.2d 287 (3d Dist. 1988).

{¶20} Furthermore, Civ.R. 53(D)(4)(b) grants the trial court discretion to "adopt * * * a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, [or] take additional evidence, or return a matter to a magistrate." Civ.R. 53(D)(4)(d), too, grants the trial court authority to "hear additional evidence." This same subsection, however, permits the trial court to "refuse to do so * * * ." In reviewing the DR court's order, this court presumes a proper independent analysis of the magistrate's decision. *Bradach v. Bradach*, 8th Dist. No. 88622, 2007-Ohio-3417, ¶ 19.

{¶21} A DR court's decision regarding a child support obligation will not be reversed on appeal absent an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). An abuse of discretion is more than an error of law, it connotes that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Moreover, as long as the decision of the DR court is supported by some competent, credible evidence, the reviewing court will not disturb it. *Masitto v. Masitto*, 22 Ohio St.3d 63, 488 N.E.2d 857 (1986).

{¶22} R.C. 3119.02 requires the trial court to calculate the amount of a child support obligation "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24"; the trial court must

determine the obligation that is "in the best interest of the children." R.C. 3119.04(B) expressly prohibits a trial court from awarding less than the amount computed under the basic child support schedule and applicable worksheet corresponding to a combined gross income of $150,000 unless the court finds that "it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." This court has consistently held that in determining child support obligations pursuant to R.C. 3119.04, trial courts must proceed on a case-by-case basis and generally do not have to state reasons for doing so. *Keating v. Keating*, 8th Dist. No. 90611, 2008-Ohio-5345, ¶ 84.

{¶23} R.C. 3119.23(D) permits a deviation in child support based upon a parent's *increased* time with the child. *Dyson v. Dyson*, 8th Dist. No. 96285, 2011-Ohio-4826. Nevertheless, the relevant statutes and the accompanying guidelines contemplate an obligation that is based upon the parties' annual incomes and expenses. *Id.* The best interest of the child remains the paramount concern. The trial court must also consider that the costs associated with housing and clothing a child remain fixed, and do not change, even with an increase in parenting time. *Id.*

{¶24} As do most SPPs, a review of the Brokaws' SPP reveals that it seeks to have the children spend as close to fifty percent of their time with each parent as possible. Nothing in the record indicates Kevin spent any additional time with the children after the SPP was drafted. Moreover, the magistrate incorrectly calculated Kevin's annual incomes for the relevant time periods, thus rendering his decision to allow Kevin

downward deviations without an evidentiary basis. Kevin failed to challenge the magistrate's calculation of Kara's income. The DR court, therefore, did not abuse its discretion in counteracting the magistrate's downward deviations for Kevin. *Roberts v. Roberts*, 10th Dist. No. 08AP 27, 2008-Ohio-6121, ¶ 10-11.

{¶25} The DR court simply followed this court's mandate in *Brokaw I* and the statutory guidelines in calculating Kevin's child support obligations. Because the DR court either reduced or increased Kevin's child support obligations commensurate with his changes in employment, it did not abuse its discretion. Kevin's second, third, and fourth assignments of error, accordingly, also are overruled.

{¶26} Kevin argues in his fifth and sixth assignments of error that the DR court's "parenting" decisions, i.e., to designate Kara as the RPSP and to deny his request for a modification of the parenting schedule, are not in his children's best interest. Kevin contends the evidence adduced at the hearing demonstrates the opposite. This court disagrees.

{¶27} R.C. 3109.04 provides in relevant part as follows:

(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
(a) The wishes of the child's parents regarding the child's care;
* * *
(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
(d) The child's adjustment to the child's home, school, and community;
* * *
(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

* * *

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶28}** The DR court's decision on the allocation of parental rights is reviewed for an abuse of discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). In this case, the DR court's designation of Kara as the children's RPSP does not constitute an abuse of discretion. The court explicitly stated that it considered the children's best interest, and its decision finds support in the record.

**{¶29}** The testimony presented at the hearing established the following facts. Both parents wanted the older child to attend the school in the district near their respective residences. Both parents were willing to keep the younger child in the day care facility in which he was currently enrolled, which was close to Kevin's new home, although Kara preferred that the court would permit her to enroll him in a facility closer to her home. The children interacted well with both Kara's and Kevin's families.

**{¶30}** Kevin, however, had moved twice in the wake of the divorce proceedings, had changed employment a few times, and by the time of the hearing lived with his fiancée. The children seem well-adjusted to both parents' homes, but were more used to Kara's because she had been the residential parent and had lived in the same residence since instituting the divorce proceedings. The children had made friends in that neighborhood and would benefit from having their maternal grandparents within a two-hour drive. Moreover, Kara had a more consistent but flexible work schedule than Kevin; she stated she would be available in case of an emergency.

{¶31} In contrast, Kevin's focus was on himself. His main concern was not so much his children's welfare, but his own perceived ability to foster good relationships with school authorities, and the distance he would have to travel to ensure his involvement in the children's lives. The DR court weighed these factors and concluded that they favored Kara as the RPSP. *Grein v. Grein*, 11th Dist. No. 2009-L-145, 2010-Ohio-2681.

{¶32} Similarly, Kevin's reasons for requesting an additional weekly overnight visit with his children seemed mainly for his own convenience. He testified that the current schedule made it difficult to get the children to bed at night. He stated it caused "stress" because they also resisted going to school the next morning; he wanted everyone to be able to "relax."

{¶33} A DR court need not set out its analysis regarding every best interest factor if the court's judgment is supported by some competent, credible evidence. *Blakeman v. Blakeman*, 4th Dist. No.07CA768, 2008-Ohio-2948. Because the DR court's decision with respect to the allocation of parental responsibilities is supported in the record, this court will not disturb it. *Id*. *Compare Bunten v. Bunten*, 126 Ohio App.3d 443, 710 N.E.2d 757 (3d Dist. 1998).

{¶34} Consequently, Kevin's fifth and sixth assignments of error also are overruled.

{¶35} In his seventh assignment of error, Kevin complains that the DR court denied his motion for the appointment of a GAL for the children. This court cannot

address this argument.

{¶36} The record reflects the DR court denied Kevin's motion prior to the hearing before the magistrate. Kevin neither objected to that denial, nor brought the matter to the magistrate's attention during the hearing. Consequently, the magistrate did not address the matter, and the issue was waived. Civ.R. 53(D)(3)(b)(iv).

{¶37} In addition, in filing his notice of appeal, Kevin did not indicate he challenged that order. This court's jurisdiction is limited to those that are designated in the notice of appeal. *Hollis v. Hi-Point Aerosol, Inc.*, 8th Dist. No. 90546, 2008-Ohio-4230, ¶ 9-10; App.R. 3(D) and 12(A)(1)(a).

{¶38} For the foregoing reasons, the DR court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, P.J., and
MARY J. BOYLE, J., CONCUR